1

The Honorable Thomas Zilly

CV 01-00336 #00000012

GO TO JUDGE ___ DL
_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR 2 5 2002  DJ

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

6
7
8
9

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| MICHAEL CROWLEY, | ) | No. C01-0336 |
| | ) | |
| Plaintiff, | ) | **WTO PROCEEDING** |
| | ) | |
| v. | ) | **PLAINTIFF'S MEMORANDUM** |
| | ) | **IN OPPOSITION TO** |
| THE CITY OF SEATTLE, a municipal | ) | **DEFENDANTS' MOTION** |
| corporation; and JOHN DOE #1 AND JOHN | ) | **FOR SUMMARY JUDGMENT** |
| DOE #2, in their capacity as police officers or | ) | |
| recruits for the City of Seattle and as | ) | Noted for: Friday, March 29, 2002 |
| individuals whose true names are unknown, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  RELIEF REQUESTED

Plaintiff Michael Crowley respectfully requests that the court deny defendants' motion

for summary judgment as to plaintiff's claims against the City of Seattle and "John Doe"

defendants for violations plaintiff's Fourth and Fourteenth Amendment Rights.  Further, plaintiff

respectfully requests that the court deny defendants' motion for summary judgment as to

plaintiff's claims against the City of Seattle and "John Doe" defendants for the State law assault

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 1

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382



and battery claims.  Plaintiff also motions the court for attorneys fees and costs in defending

summary judgment motion.

## II.  STATEMENT OF FACTS

- WTO BACKGROUND

From November 29th to December 4th, 1999 the City of Seattle hosted the ministerial

conference of the World Trade Organization (WTO).  The WTO conference commenced on

Tuesday November 30, 1999.  Foreign and trade ministers from 135 nations who came to Seattle

for the WTO conference encountered 30,000-50,000 protesters airing environmental, labor,

religious, and human rights objections to WTO policies. The strategies of protesters were well

publicized in the months preceding the conference.[1]  These included a wide spectrum of major

and minor marches, political theater, civil disobedience, prayer vigils, and teach-ins.  Not only

had hundreds of groups previously announced their intentions to demonstrate against the policies

of WTO, numerous groups even outlined their civil disobedience tactics and negotiated with

police to effect mass arrests. (Stamper Dep., Ex. C, p. 18).[2]

The City of Seattle's preparations for WTO did not include a plan to deal with the well-

publicized efforts to shut down the WTO.[3]  Consequently, the City of Seattle and the Seattle

---

1 See e.g. *New York Times* article on October 13, 1999 stating: "[t]hree hundred groups are vowing to bring 50,000
people or more to downtown Seattle to picket, demonstrate, hold teach-ins and cause general disruption...that could
turn the city's streets into a carnival of protest and, perhaps, a morass of gridlock."
2 Deposition of former Seattle Police Chief Norm Stamper taken for *Hickey v  City of Seattle et al* , January 26,
2001, Ex. C, p. 18.  Deposition of former Mayor Paul Schell taken for *Hickey v  City of Seattle et al* , December 5,
2000, Ex. D, will also be cited to and is included in the record.
3 WTO Accountability Review Committee, Citizen Panel 3 Rpt., Ex. E, Finding 1, p. 8

Plaintiff's Memorandum in Opposition                                    John Tirpak
To Defendants' Motion for Summary                                    Attorney at Law
Judgment - 2                                                      6015 Seventh Ave. NW
                                                                206-297-3382

Police Department engaged in reactionary measures that were imprecise, ineffective in achieving their stated goals of preserving the peace, and often illegal.  In dealing with unlawful assemblies large-scale arrests rather than chemical irritants or other less-lethal force should be the tactic of choice.[4]  The Seattle Police Department, on the other hand, used chemical irritants such as pepper spray and tear gas on individuals regardless of whether they were peaceful or not, located on the street or sidewalk, or whether they had WTO authorized credentials or not. (Stamper Dep., Ex. C, pp 9-11, 14-16, 31-33, 77-78).  Further, the Seattle Police Department fired rubber projectiles at individuals. (Stamper Dep., Ex. C, pp 9-10, 20).  Such policies created an atmosphere where officers were under the impression that they could use force as a first resort on peaceful demonstrators and bystanders alike. (Stamper Dep., Ex. C, 21-25; WTO Accountability Review Committee, Panel 3, Finding 3, pp. 14-17).  Finally, Chief Stamper never disciplined a single officer from the Seattle Police Department for their actions during the WTO protests. (Stamper Dep., Ex. C, p. 57).

## NO CURFEW WAS IN PLACE AT THE TIME

No curfew was in place at the time that officers grabbed Mr. Crowley, pepper sprayed/tear gassed him, and shot him with a less-than-lethal round of ammunition.  Then Mayor Paul Schell did in fact declare a civil state of emergency on November 30, 1999 and police did have authority to clear the streets. (Schell Dep., Ex. D, pp 20-21).  However, the order only

---

4 WTO Accountability Review Committee, Citizen Panel 3 Rpt., Ex. E., Finding 3, p. 14

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 3

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

prohibited travel within the "limited curfew zone" from 7:00 pm on November 30 to 7:30 am on December 1. (Schell Dep., Ex. D, pp 39-40). It was not until December 1, 1999 that travel in the "limited curfew" zone was restricted during daytime hours. (Local Proclamation of Civil Emergency Order Number 3, City of Seattle, Ex. H). As facts will establish, Mr. Crowley encountered the above force shortly after leaving Virginia Mason Medical Center at approximately 3:30 p.m. (M. Crowley Dep., Ex. B, pp. 27-28).

• FACTS PERTAINING TO MICHAEL CROWLEY

Michael Crowley is currently and has been at all times relevant to this suit employed as a patient care technician at Virginia Mason Medical Center (hereinafter Virginia Mason). Virginia Mason is located in Seattle's First Hill neighborhood bordering Seneca and Spring Streets and Boren and 9th Avenues. On the morning of November 30, 1999 Mr. Crowley attended an EKG interpretation class at Virginia Mason required for certification as a monitor technician. (M. Crowley Dep., Ex. B, p. 19). He arrived at work at 9:00 am and left to go home shortly after class was dismissed at approximately 3:30 p.m. (M. Crowley Dep., Ex. B, pp. 27-28).

Upon leaving Virginia Mason Mr. Crowley planned to walk to the Monorail at Westlake Center and take it to The Seattle Center, where he could then take a bus home to the Ballard neighborhood in North Seattle. (M. Crowley Dep., Ex. B, p. 32). He initially traveled west down Seneca Street towards downtown. (M. Crowley Dep., Ex. B, p. 34). At Seneca and 6th Streets Mr. Crowley came into contact with five or six policemen dressed in black riot gear without any identification. (M. Crowley Dep., Ex. B, p. 36, 38). Mr. Crowley's description of officers dressed in black riot gear is consistent with numerous reports documenting unidentifiable Seattle

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 4

John Tırpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

Police Department officers throughout the WTO conference. (WTO Accountability Review Committee, Citizen Panel 3 Rpt., Ex. E, Finding 8, p. 23; American Civil Liberties Union of Washington, "Out of Control, Seattle's Flawed Response to Protests Against the World Trade Organization, Ex. F, pp 58-61, July 2000). Mr. Crowley was told that he could not proceed West down Seneca towards 5[th] Avenue but rather would have to "go south" in the exact opposite direction of Mr. Crowley's home. (M. Crowley Dep., Ex. B, p. 36, 38). Officers were also preventing individuals from walking north on 6[th] Avenue. (M. Crowley Dep., Ex. B, p. 39). While Mr. Crowley could see numerous people on 6[th] Street north of Seneca he observed no smoke, fires, police vehicles, or any media vehicles in the street. (M. Crowley Dep., Ex. B, p. 40). In fact, he could see no signs of any chaotic situation. Id.

Mr. Crowley obeyed the police order and walked south to the corner of 6th and Spring Street, where he turned right heading west towards 5th Avenue. (M. Crowley Dep., Ex. B, p. 41). At 5th Avenue and Spring Streets he again could see no smoke or fires indicating a chaotic situation so he headed north on 5th Avenue intending to reach the monorail. (M. Crowley Dep., Ex. B, p. 42-43).

Mr. Crowley was near the corner of 5th Avenue and Seneca when he was approached by an unidentifiable officer who grabbed him by the arm without warning. (M. Crowley Dep., Ex. B, p. 43, 46). The officer was dressed in the same unidentifiable black riot gear as those on 6th and Seneca except that rather than a helmet this officer wore a black gas mask. (M. Crowley Dep., Ex. B, p. 44-45, 53). It bears repeating that several independent reports have verified the persistent lack of identification on the part of officers on the streets of Seattle during the week of

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 5

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

the WTO conference. (WTO Accountability Review Committee, Citizen Panel 3 Rpt., Ex. E, Finding 8, p. 23; American Civil Liberties Union of Washington, "Out of Control, Seattle's Flawed Response to Protests Against the World Trade Organization, pp 58-61, Ex. F, July 2000). At the time this anonymous officer grabbed Mr. Crowley he could see no violent activity and only pockets of people in the street. (M. Crowley Dep., Ex. B, p. 43, 46, 82-83). Further, he did not observe the officers prevent anyone else from traveling north on 5th Avenue. (M. Crowley Dep., Ex. B, p. 53). Mr. Crowley showed the officer his identification badge from Virginia Mason, which he wore around his neck, and told the officer, "I'm trying to get home. I need to get to the monorail; I live in Ballard." (M. Crowley Dep., Ex. B, p. 44). Rather than allow him to go home the officer instead spun him around and said, "south." (Id.).

Again, Mr. Crowley complied with the order of the police officer and began moving south. (Id.). However, after only a few steps another unidentified police officer also dressed in same black riot gear and a black gas mask walked up to Mr. Crowley and sprayed either pepper spray or tear gas out of a red hand-held fire extinguisher, dousing him with extremely painful chemicals. (M. Crowley Dep., Ex. B, p. 46). [5] Mr. Crowley never received any warnings prior

---

5 Pepper spray – also called "OC" in reference to its active ingredient: oleoresin capsicum – is a projectile substance derived from cayenne peppers. The chemical agents in oleoresin capsicum produce sensations of heat and burning on human nerve-endings, in particular those located in the eyes, nose, and mouth. The intensity of this burning is measured along a scale known as the Scoville heat unit rating. One to three Scoville units are detectable by the tongue as a level of heat. The pepper spray used by police in Seattle – the strongest and purest available – contained 10 – 15% oleoresin capsicum extract, with a Scoville rating of 1.5 to 2 million units. *Hawken, Paul,* "On the Streets of Seattle," The Amicus Journal, Spring 2000, p. 29, 2000.

Tear gas – Two types of tear gas was also used by the Seattle Police Department during WTO, CS (o-chlorobenzylidenomalononitrile) and CN (1-chloroacetophenone). Both agents have been widely used by the military and police. On contact, tear gas can cause: burning and involuntary closing of the eye, tearing, temporary blindness, burning of the skin, gagging, vomiting, sneezing, coughing, tightness in the chest, irritation of the throat

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 6

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

1  to being sprayed nor did he notice that anyone in the vicinity had previously encountered

2
3  chemical agents. (M. Crowley Dep., Ex. B, p. 47-48).  Mr. Crowley's account comports with

4  Seattle Police Department policy or custom during the WTO protests not to give warnings prior

5  to using tear gas or pepper spray. (M. Crowley Dep., Ex. B, 14-16).  Additionally, Mr. Crowley

6  never observed anyone other than the aforementioned officers use any form of chemical irritants

7
8  or wearing gas masks. (M. Crowley Dep., Ex. B, p. 55).  Further, Mr. Crowley was facing south,

9  i.e. in compliance with the order given by the initial officer who grabbed his arm, when he was

10  sprayed. (M. Crowley Dep., Ex. B, p. 50).

11  Mr. Crowley was still reeling from being gassed when he was shot.  His deposition in

12  part reads as follows:

13
14  Q: Okay.  After you were sprayed, what happened?

15  A: Well, I went down on one knee, kind of tried to breath without it burning, opened my
   eyes so I could see.
16  I don't recall hearing anything, but something hit me in the shoulder, and I remember
   feeling something somehow bounce, and I had barely looked down, and I saw a small
17  ball rolling.  I picked it up, thought that they were shooting at me, and pretty much got up
   and ran south.
18
19  M. Crowley Dep., Ex. B, p. 48.  This less-than-lethal round of ammunition is presently in the

20  possession of defense counsel. (Tirpak Decl. Ex. A).

21  • **Relevant Procedural Facts**

22

23

24  and lungs, burning of the mucous membranes of the nose and mouth, salivation, and diarrhea.  Tear gas may also
   exacerbate the symptoms of people with lung disease, asthma or emphysema. *American Civil Liberties Union of*
25  *Washington*, "Out of Control, Seattle's Flawed Response to Protests Against the World Trade Organization, Ex. F,
   p. 42, July 2000.
26

27  Plaintiff's Memorandum in Opposition                                      John Tirpak
28  To Defendants' Motion for Summary                                      Attorney at Law
   Judgment - 7                                      6015 Seventh Ave. NW
                                                    206-297-3382

Mr. Crowley filed the present claim against the City of Seattle, John Doe #1, and John

Doe #2 in United States District Court for the Western District of Washington at Seattle on

March 7, 2001.  United States District Judge Barbara Rothstein limited plaintiff's ability to

depose City witnesses in her discovery ruling August 4, 2000. (Order Regarding Discovery and

Depositions, Ex. G; Tirpak Decl. Ex. A).

### III.  ISSUES PRESENTED

1.  Whether claims against "John Doe" defendants should be dismissed where there is ample

evidence that officers of the Seattle Police Department concealed their identity by not

having any identification on the outermost layer of their clothing in contradiction to then

existing internal police policy?

2.  Whether Mr. Crowley has alleged facts, which could possibly entitle him to relief against

the City of Seattle for Constitutional and State Law Claims?

### IV.  LEGAL AUTHORITY

**A. The Claims Against the "John Doe" Defendants Should Not Be Dismissed**

In *Gilespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) the Ninth Circuits Court of

Appeals held that:

> [W]here the identity of the alleged defendant is not known prior to the filing of a
> complaint, the plaintiff should be given an opportunity through discovery to identify the
> unknown defendants, unless it is clear that discovery would not uncover the identities, or
> that the complaint would be dismissed on other grounds.

Defendants argue that "the plaintiff had ample opportunity and chose not to conduct any

discovery to uncover the identities of the individual officers." (Defendants' Motion for Summary

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 8

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

Judgment, p. 12).  However, in such an instance where it was customary for officers to flaunt stated Seattle Police policy requiring identification the equities do not support dismissing the "John Doe" defendants.

**B.  Mr. Crowley has Alleged Sufficient Facts to Establish a Constitutional Violation**

**1.  Mr. Crowley Need Not Identify the Precise "John Doe" Officers in Order to Establish a Constitutional Violation.**

Mr. Crowley has alleged sufficient facts for a jury to find that "John Doe" defendants did exist and acted pursuant to policy or custom in violation of his Fourth Amendment right to remain free of unreasonable seizure and excessive force and thus hold the City of Seattle vicariously liable.

Mr. Crowley has not claimed that the City of Seattle is liable under the theory of *respondeat superior* for the Fourth and Fourteenth Amendment violations that give rise to his 42 U.S.C. § 1983 claim.  Rather the City of Seattle's *respondeat superior* liability is based solely upon Mr. Crowley's state law assault and battery claims. (Complaint ¶ 3).

**2.  Conduct of "John Doe" Defendants Establishes both a Fourth and Fourteenth Amendment Violation.**

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) the Supreme Court recently determined the manner in which district courts should proceed when excessive force claims are brought under 42 U.S.C. § 1983.  Where government officials assert the defense of qualified immunity a court must first reach the "threshold question," whether the plaintiff has shown the deprivation of a constitutional right. *Id.* at 2156.  Second, the court then shall determine whether the right violated was clearly established in a "particularized...sense: ...the

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 9

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

relevant, dispositive inquiry...is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Deorle v. Rutherford*, 272 F.3d 1272, 1278-1279 (9th Cir. 2001) (quoting, *Saucier* at 2156). Accordingly, Mr. Crowley's excessive force claim must first be examined to ascertain if the facts, when viewed in the light most favorable to Mr. Crowley, could establish a Constitutional violation.

Mr. Crowley has alleged that "John Doe" officers grabbed him in the arm, spun him around, sprayed him with pepper spray, and shot him with a less-than-lethal round while he was non-violently complying with a directive to move "south." Clearly, Mr. Crowley has alleged a Fourth Amendment violation of excessive force. However, such an allegation only suffices to satisfy the initial inquiry under *Saucier*. *Id* at 2156. The more rigorous inquiry occurs when examining whether this right is clearly establish under the law when examining the particularized facts such that a reasonable officer would conclude that the conduct was unlawful.

While Mr. Crowley was not arrested, his Fourth amendment violation is still analyzed using the factors articulated in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). *Graham* instructs that no mechanical tests exists for whether a particular application of force was unreasonable rather the reasonableness must instead be assessed by carefully considering the objective facts and circumstances that confronted the arresting officer or officers. *Id* at 396, 109 S.Ct. at 1871-72. In determining reasonableness, "the nature and quality of the intrusion on the individual's Fourth Amendment interests" must be balanced against the "countervailing government interests at stake. *Id* (internal quotations omitted). In weighing the governmental interests involved the following factors should be taken into account: (1) the

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 10

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

> Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the *jury*. (emphasis added).

*United States v. Chew*, 27 F.3d 1432, 1440-1441 (9th Cir. 1994) (citing, *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991), *cert denied*, 505 U.S. 1206, 112 S Ct. 2995, 120 L.Ed.2d 872 (1992); *White by White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986))

- **Nature and Quality of Mr. Crowley's Fourth Amendment Interest**

Mr. Crowley's Fourth Amendment right to be free of excessive force were severely violated by being pepper sprayed/tear gassed and shot with a less-than-lethal round of ammunition. No warnings were ever given to Mr. Crowley in regards to the force that would be used against him by the officers. (M. Crowley Dep., Ex. B, p. 46-48). An officer must give a warning, when feasible, before shooting a suspect. *Deorle v Rutherford*, 242 F.3d 119, 1126 (2001) superceeded on other grounds by *Deorle v. Rutherford* 272 F.3d 1272 (9th Cir. 2001).

Pepper spray causes its victims to suffer excruciating pain... involuntary closing of the eyes, a gagging reflex, ... temporary paralysis of the larynx ... disorientation, anxiety and panic. *Headwaters Forest, supra.,* 211 F.3d at 1134. The officer had no right to use such force (or for that matter any force) here. The defendants had other alternatives open to them. *See Headwaters Forest, supra,* 211 F.3d at 1139.

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 11

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

- **Countervailing Government Interests**

The "objective reasonableness" factors when viewed, as they must, in the light most favorable to the non-moving party lean towards concluding that Mr. Crowley's Fourth Amendment rights were violated and at their very minimum raise substantial issues of fact thus precluding summary judgment. First, Mr. Crowley was not committing a crime at the time that he was sprayed with either pepper spray or tear gas and shot with a less than lethal round of ammunition. He was attempting go home from work. While he was in the street at the time he was not impeding traffic, as the streets were already clear of any vehicular traffic at the time. (M. Crowley Dep., Ex. B, p. 30, 52). Nor did Mr. Crowley hear any orders to disperse, which would indicate that he was part of an unlawful assembly. (M. Crowley Dep., Ex. B, p. 47).

The second and usually dispositive factor is whether Mr. Crowley posed a danger to the officer. *Chew* at 1441-42. Here, Mr. Crowley was unarmed and non-violent at all times. He was also <u>retreating</u> both when he was sprayed and when he was struck by the less-than-lethal round. (M. Crowley Dep., Ex. B, p. 48). "[W]here there is no need for force, *any* force is constitutionally unreasonable." *Headwaters Forest Defense v. Humboldt County*, 211 F.3d 1121, 1133 (9th Cir. 2000) <u>rev'd on other grounds by</u> *County of Humboldt v. Headwaters Forest Defense*, 122 S.Ct. 24, 151 L.Ed.2d 1 (2001) (emphasis in original).

Finally, Mr. Crowley was not resisting or fleeing arrest at the time that he was gassed and shot. As stated earlier, he was never arrested. Further, he was actually complying with the officer's order to go "south." (Crowley Dep., Ex. B, p. 48-50). This is why his back was turned when he was struck.

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 12

John Tirpak
Attorney at Law
6015 Seventh Ave NW
206-297-3382

In *Deorle*, 272 F.3d 1272, the Court reversed the District Court's granting of defendants' motion for summary judgment in a §1983 claim for excessive force. It held that the officer's use of less-than-lethal beanbag round without warning constituted excessive force in violation of the Fourth Amendment and that the officer was not entitled to qualified immunity. The court cited as crucial that the officer failed to warn the plaintiff and that he had alternatives to the force employed. *Id.* at 1283-1284 (holding that failure to give warning is a factor in applying the *Graham* balancing test). Likewise, Mr. Crowley was not given any warnings of force. However, unlike in *Deorle*, Mr. Crowley was never armed and was actually retreating rather than approaching the officer at the time that he encountered such force.

The defendants argue that the declaration of a civil state of emergency shortly before the incident in question should render the force "objectively reasonable" as a matter of law. (Defendants' motion for Summary Judgment pp 17-19). Defendants cite *United States v. Chalk*, 441 F.2d 1277 (4th Cir. 1971) for the proposition that "the government requires broad discretion in responding to an emergency situation." (Defendants' motion for Summary Judgment p. 17). However, *Chalk* merely upheld a search of an automobile pursuant to police stopping a vehicle for curfew violation. Here, defendants are attempting to justify not only stopping Mr. Crowley from walking north, but also spraying him with pepper spray or tear gas and shooting him with a less-than-lethal round of ammunition as he attempted to comply with an order to go "south." Further, unlike in *Chalk*, no curfew was in effect in the City of Seattle at the time of this incident. Consequently the case in inapposite.

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 13

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

Defendants also analogize this case to *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) and *Saucier v. Katz*, supra. *Saucier*, however, involved the manner in which military police at a military compound arrested a protester that was unfurling a banner near the Vice President of the United States.  Here, Mr. Crowley was on the streets of Seattle, not arrested, walking away from the officer in question, and not posing a danger to anyone, least of all the Vice President of the United States.  *Jackson* involved a scenario where; 1) police were summoned to a park where 30-50 individuals were drinking; 2) police attempted to arrest one of the individuals for an outstanding warrant; 3) The mother of this individual "ran to interfere" with the officer; 4) "officers had warned 'everyone' in advance that chemical irritant would be used if [the plaintiff] and her group did not disperse"; and 5) the plaintiff was arrested for failure to disperse. *Id.* at 649-650.  As the facts show the present case is completely different.  Mr. Crowley's behavior in no way posed a threat to the officers in question and thus *any* force is unreasonable. *Headwaters*, 211 F.3d at 1133. (emphasis added).

### 3.  Fourteenth Amendment Liability

The previous section has established that Mr. Crowley has affirmatively alleged facts, which taken in the light most favorable to him establish a Fourth Amendment violation. Consequently, his Fourteenth Amendment claim should not be dismissed as the Fourteenth Amendment applies liability to municipalities via 42 U.S.C. § 1983.

Additionally, "[t]here can be no doubt that the Due Process Clause of the Fourteenth Amendment confers both procedural and substantive rights." *Armendariz v Penman*, 75 F.3d

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 14

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

1311, 1318 (9th Cir. 1996) (citing, *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 1785,

118 L.Ed.2d 437 (1992); *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95

L.Ed.2d 697 (1987); *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662

(1986).

> Citizens have a fundamental right of free movement, 'historically part of the amenities of life as we have known them.' *Papachristau v. City of Jacksonville*, 405 U.S. 156, 164, 92 S.Ct. 839, 844, 31 L.Ed 110 (1972); *see also United States v. Wheeler*, 254 U.S. 281, 293, 41 S.Ct. 133, 134, 65 L.Ed. 270 (1920) ('In all the [s]tates from the beginning down to the adoption of the Articles of Confederation the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective [s]tates, to move at will from place to place therein, and to have free ingress thereto and egress therefrom....").

*Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944, 9th Cir. (1997).

Here, there exists material issues of fact regarding whether the policies or customs of the

City of Seattle restricted the Mr. Crowley's movement to such an extent that his Fourteenth

Amendment Privileges and Immunities rights were violated.   The limited curfew zone only took

effect at 7:00 pm on November 30, 1999.  Mr. Crowley was denied passage north on 5th Avenue

shortly after 3:30 pm.  Further, Mr. Crowley has attested to the fact that he did not observe any

chaotic events in the immediate vicinity.  Therefore, it is no wonder that the officers did not stop

anyone else at the time.  A reasonable jury could find for Mr. Crowley on his 14th Amendment

Privileges and Immunities Claim.  Accordingly, the court should deny the defendants' motion for

summary judgment on this claim.

**4.  Municipal Liability**

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 15

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

The City of Seattle is liable if the defendants acted pursuant to City policy, practice or custom. *Fuller v City of Oakland*, 47 F. 3d 1522, 1534 (9th Cir. 1995) (citing, *Monell v Department of Social Sers.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)). There is ample evidence in the record that during WTO, it was City policy, practice or custom to use pepper-spray without warning at the officer's discretion to clear the streets, even if this meant spraying members non-violent bystanders in the process. See, Stamper Dep., Ex. C, pp 9, 11, 14-16, 31-33, 45, 47, 49, 57, 77-78. Further, there is ample evidence in the record that it was City policy, practice or custom to fire less-than-lethal projectiles into the crowd during the WTO demonstrations. (Stamper Dep., Ex. C, pp 9-10, 20).

- **Ratification**

A municipality is also liable if the chief law enforcement policymaker ratifies the actions of the officer by approving of his actions or by failing to impose discipline after the fact.  Such ratification is sufficient proof of municipal policy or custom and is sufficient to impose § 1983 liability on the municipality.[6]

In the instant case, then Chief Stamper approved of the pepper-spraying firing of projectiles at citizens did not themselves engage in violent activity at his deposition. (Stamper

---

[6]        *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-127, 108 U.S. 915, 925-26, 99 L. Ed. 2d 107 (1988); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-647 (9th Cir. 1991); *Fuller*, 47 F.3d at 1534; *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 564-66 (1st Cir. 1989) (police superintendent's employment of a disciplinary system that was grossly deficient rendered him liable and affirmatively linked him to the shooting of plaintiff); *Grandstaff v. Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (cited with approval in *Larez, supra*).

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 16

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

Dep., Ex. C, p. 11, 20, 57, 77-78).  The City faces municipal liability based upon the actions,

policymaker's ratification, and approval of the use of force.

Further, Chief Stamper never disciplined a single officer from the Seattle Police

Department for their actions during the WTO protests. (Stamper Dep., Ex. C, p. 57).

**5.  Mr. Crowley Alleges Facts Sufficient Enough for a Jury to Find for him on a State Law Assault and Battery Claim**

A battery is "[a] harmful or offensive contact with a person, resulting from an act

intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such

a contact is imminent." *McKinney v. City of Tukwila*, 103 Wash.App. 391, 408 (2000) (quoting,

*W. Page Keeton Et Al., Prosser and Keeton on Torts* §9, p. 39) (5th ed.1984).  An assault is any

act of such a nature that causes apprehension of a battery. *Id.* (citing, *Keeton* §10, at 43).

The facts, when viewed in the light most favorable to Mr. Crowley, are sufficient enough

for a jury to hold the defendants liable for assault and battery under Washington State law.  As

the previous Fourth Amendment discussion indicates there are sufficient factual disputes in the

record in regards to the force that these officers were confronted with, the need to employ force

of their own, and the "reasonableness" of the force employed by the officers.  Mr. Crowley

incorporates the Fourth Amendment discussion into this section.

The pepper-spraying or tear gassing and shooting of Mr. Crowley with a less-than-lethal

round of ammunition constituted an assault and battery.  Since assault is an intentional tort, the

state law defense of comparative fault is not available. *Honegger v Yokes*, 83 Wn. App. 293,

297, 921 P.2d 1080 *rev  denied*, 131 Wn. 2d 1016 (1997).

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 17

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

The defense argues that since the force used by the officers in question was reasonable the officers' actions were privileged and hence the assault and battery claims must fail. However, such an argument requires the court to weigh the facts and subscribe to the defense's version of those facts. Doing so usurps the power of the jury and may not be done on summary judgment. Our courts have consistently held that officers have the right to use the degree of force warranted under the circumstances, *Coles v. McNamar*, 131 Wash. 377, 385 (1924), but they also consistently hold that what constitutes reasonable force under the circumstances is for a jury to decide. *Id.* at 384-385.

> Whether he used greater force in making the arrest than a reasonably prudent man would have used under the circumstances, and whether he was justified at all, depends upon the facts to be resolved by the *jury*  (emphasis added).

*Id.*

## 6. Statute of Limitations

Mr. Crowley's claims against "John Doe" defendants are not barred by the statute of limitations.  Fed.R.Civ.P. 15(c) allows for the relation back of an amended complaint upon ascertaining the true identities of defendants under the "shared attorney" theory and the "shared interest."

> The "shared attorney" method of imputing Rule 15(c)(3) notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action.

*Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 196 (3rd Cir. 2001) (noting that other circuits have adopted this method). <u>See</u>, *Gleason v. McBride*, 869 F.2d 688, 693 (2nd Cir.

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 18

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

1   1989); *Barkins v. Int'l Inns, Inc.*, 825 F.2d 905, 907 (5th Cir. 1987); *Berndt v. State of Tennessee*,

2   796 F.2d 879, 884 (6th Cir. 1986).

3

4        Defense counsel represents Seattle Police officers notice is imputed to both "John Doe

5   #1" and "John Doe #2." Therefore, Mr. Crowley's claims are not barred by the statute of

6   limitations.

7

8        A second method of imputing Rule 15(c)(3) notice to a previously unnamed third party is

9   the "identity interest" method.

10        Identity of interest generally means that the parties are so closely related in their business
          operations or other activities that the institution of an action against one serves to provide
11        notice of the litigation to the other.

12   *Singletary* at 197 (citing, 6A Charles A. Wright et al., *Federal Practice and Procedure* § 1499, at

13   146 (2d ed. 1990)). The Supreme Court has adopted this method of imputing notice for the

14   purposes of 15(c)(3). see, *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18

15   (1986).

16

17        Timely filing of a complaint, and notice within the limitations period to the party named
          in the complaint, permit imputation of notice to a subsequently named and sufficiently
18        related party.

19   *Id.* at 29, 106 S.Ct. 2379.

20

21        Here, John Doe defendants are "sufficiently related" to the City of Seattle especially

22   when considering the extensive litigation that has ensued in the aftermath of the protests of the

23   WTO. Consequently, under both the aforementioned methods of imputing notice claims against

24   the "John Doe" defendants if their identities are ascertained will relate back. Mr. Crowley's

25

26

27   Plaintiff's Memorandum in Opposition              John Tirpak
     To Defendants' Motion for Summary                 Attorney at Law
28   Judgment - 19                                      6015 Seventh Ave. NW
                                                        206-297-3382

claims against John Doe #1 and John Doe #2 are therefore not barred by the statute of limitations.

## 7.  Mr. Crowley is Entitled to Punitive Damages

If a government official acts knowingly or maliciously to deprive an individual of their Constitutional rights a punitive damage award is appropriate to punish the defendant and deter future similar behavior. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-267, 101 S.Ct. 2748, 2759-2760, 269 L.Ed.2d 616 (1981).  Previous sections have shown that "John Doe" defendants are not properly dismissed and claims against "John Doe" are likewise not properly dismissed.  Therefore, Mr. Crowley is entitled to prove at trial that defendants knowingly and maliciously deprived him of his Constitutional rights to warrant a punitive damage award.

## V.  CONCLUSION

For the aforementioned reasons Mr. Crowley respectfully requests that the Court deny defendants' motion for summary judgment and award Mr. Crowley reasonable attorneys fees and costs.

Dated this 25th day of March, 2002.

By:_____

John Tirpak WSBA # 28105
Attorney for Plaintiff

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 20

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

Certificate of Service

The undersigned certifies under the penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused jto be served in the manner noted below a copy of this document entitled **Plaintiff's Memorandum in Opposition To Defendants' Motion for Summary Judgment** on the following individual(s):

**Kim M. Tran**
**Stafford Frey Cooper**
**2500 Rainier Tower**
**1301 Fifth Avenue**
**Seattle, WA 98101**

[ ] Via Facsimile
[ ] Via Mail
[X] Via Messenger

DATED this 25th day of March, 2002, at Seattle, Washington.

_____
Isak Bressler

Plaintiff's Memorandum in Opposition
To Defendants' Motion for Summary
Judgment - 21

John Tirpak
Attorney at Law
6015 Seventh Ave. NW
206-297-3382

# EXHIBITS
# NOT
# SCANNED